```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF VIRGINIA
                        ALEXANDRIA DIVISION

UNITED STATES OF AMERICA,    )  Case 1:21-cr-286-1
                             )
             Plaintiff,      )
                             )
      v.                     )  Alexandria, Virginia
                             )  February 15, 2023
WILLIAM F. SNOW,             )  9:26 a.m.
                             )
             Defendant.      )
                             )  Pages 1 - 16


              TRANSCRIPT OF SENTENCING

       BEFORE THE HONORABLE ANTHONY J. TRENGA

           UNITED STATES DISTRICT COURT JUDGE


APPEARANCES:

FOR THE PLAINTIFF:

     EDWARD P. SULLIVAN, ESQUIRE
     JORDAN DICKSON, ESQUIRE
     HEIDI B. GESCH, ESQUIRE
     OFFICE OF THE UNITED STATES ATTORNEY
     2100 Jamieson Avenue
     Alexandria, Virginia  22314
     (703) 299-3700

FOR THE DEFENDANT:

     GRETCHEN TAYLOR POUSSON, ESQUIRE
     ALLISON F. THIBAULT, ESQUIRE
     COOK CRAIG & FRANCUZENKO PLLC
     3050 Chain Bridge Road, Suite 200
     Fairfax, Virginia  22030
     (703) 865-7480

THE DEFENDANT, WILLIAM F. SNOW, IN PERSON


   COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES
```

```
 1                   P R O C E E D I N G S
 2            THE CLERK:  Criminal Case 1:12-cr-286, United
 3  States v. William F. Snow.
 4            Counsel, will you please note your
 5  appearances for the record.
 6            MR. SULLIVAN:  Good morning, Your Honor.
 7  Edward Sullivan, Jordan Dickson, and Heidi Gesch for
 8  the United States.
 9            THE COURT:  Good morning.
10            MS. POUSSON:  Good morning, Your Honor.
11  Gretchen Pousson on behalf of William Snow.
12            THE COURT:  We're here for sentencing.
13            Have you reviewed the presentence report with
14  Mr. Snow, and do you have any objections other than
15  those you've already asserted in your filings?
16            MS. POUSSON:  Correct, Your Honor, I've
17  reviewed it.  Our only objections are outlined in our
18  report.
19            THE COURT:  All right.  Do you want to be
20  heard any further on the objections?
21            MS. POUSSON:  No, Your Honor.
22            THE COURT:  All right.  Does the government
23  have any objections to the presentence report?
24            MR. SULLIVAN:  No, Your Honor.
25            We would note, though, that it appears
```

1   defense counsel has raised a departure at the back end
2   of their sentencing brief dealing with age and
3   infirmity.  We didn't address that in our sentencing
4   brief.  I'm happy to address that now.
5           THE COURT:  Yes.
6           MR. SULLIVAN:  The bottom line is under *Koon*
7   *v. United States*, it requires extraordinary
8   circumstances to do such a departure.  We submit that
9   his medical condition here does not warrant that
10  departure.
11          THE COURT:  All right.  Thank you.
12          MR. SULLIVAN:  Thank you, Your Honor.
13          THE COURT:  Do you want to be heard any
14  further on the sentencing factors?
15          MR. SULLIVAN:  Just briefly, Your Honor.  The
16  government would submit, in addition to what it stated
17  in its brief, counsel has argued in Mr. Snow's brief
18  that Ms. Starliper is the most responsible party in
19  this conspiracy scheme.  We have addressed that in our
20  brief.
21          I just want to make clear to the Court that
22  that is simply not the case.  We have turned over a
23  mountain of evidence, including emails that are
24  addressed in the indictment itself, indicating that he
25  drove the bus in this scheme.

1                We submit that the situation does call for a
2    stiff wake-up call because at two separate points in
3    their brief, there's indications that Mr. Snow might
4    not get it, that he's indicating that Ms. Starliper is
5    the one most responsible, that he didn't fully
6    appreciate at the time that he was signing --
7    submitting applications that involved extensive fraud.
8                So for the reasons stated in our brief, as
9    well as what we've addressed here today, we do indicate
10   that a within-guideline sentence is warranted.
11               THE COURT:  All right.  Thank you.
12               MR. SULLIVAN:  Thank you.
13               THE COURT:  Counsel.
14               MS. POUSSON:  Your Honor, first, to address
15   the government's contention that my client doesn't get
16   it, that's simply not true.  He's pled guilty, accepted
17   responsibility for his role in this conspiracy to
18   commit fraud against the United States.
19               It is just simply his contention that when he
20   was participating in the fraud, he didn't realize that
21   since she committed the fraud, since she authored the
22   documents, submitted the documents, forged a signature
23   that he was also criminally liable for that.  He gets
24   it now.  He knows that he is, that even though it was
25   her company that submitted the documents, that it was

1  her company, period, that was benefiting from it, he
2  knows that he was part of that conspiracy even if he
3  didn't actually make up the false statements.
4              He still knew they were being submitted.  He
5  was totally aware of that, and that's why he entered a
6  plea of guilty.
7              He, of course, has always maintained that he
8  didn't commit bribery, and that is part of our
9  objection obviously.  In the presentence report at
10 paragraph 10, the government also claims that he
11 admitted such.  He did not.  He never has because, of
12 course, bribery requires a specific intent, which he
13 never had.
14             There might have been actions that Diane
15 Sturgis took at the same time that her daughter was
16 employed, but Mr. Snow has always maintained that that
17 employment was a *bona fide* employment and that he did
18 not have the intent to influence the government
19 official, which is why the plea is what it is.  He did
20 not plead guilty to bribery, or we would have gone to
21 trial.
22             As far as the sentencing factors, Your Honor,
23 I would submit that this is an aberration in an
24 otherwise long life as a law-abiding, productive
25 citizen and father.  My client turns 72 in about a

1  month.  He has absolutely no prior record, a very
2  impressive employment record, six years as an air force
3  reservist.
4          He raised two children who are now adults,
5  and his daughter has, I believe, four grandkids.  He
6  supported his estranged wife until she passed.
7          He has otherwise good character.  We
8  submitted to the Court a number of character letters
9  that talk about his work in the federal contracting
10 field, how he always had high moral standards, that he
11 is a person who gives freely.  He's a very generous,
12 kind, funny soul.  Interestingly, the three of his
13 character letters were submitted by Rita Starliper's
14 family.  He was a part of the Starliper family for
15 around 20 years, and they know him to be of good moral
16 character.
17         He does have some health issues, some of
18 which are probably his own doing given the fact that he
19 smokes a lot and he's not always so good at taking his
20 medication for his high blood pressure.  He's had some
21 strokes.  He always makes light of it, but it is
22 serious.
23         We would be asking, if the Court does impose
24 a period of incarceration, the Court to recommend not
25 only self-surrender but designation to a facility like

1  Butner that has both the medical facility and camp.
2           I think the most important factor for the
3  Court to consider under 18 U.S.C. 3553(a) is the need
4  to avoid unwarranted sentencing disparities here.
5  Diane Sturgis was the government contracting official.
6  She received a 30-month sentence concurrent with
7  another 24-month sentence.  She received in an
8  unrelated but kind of related scheme -- because it was
9  her daughter again, but it had nothing to do with
10 Mr. Snow or Ms. Starliper.  Her sentence already has
11 been reduced, and she's been released.
12          Rita Starliper, the owner of Star-Hawk, the
13 controller of all the finances, the reason that the
14 person who would receive the lion's share of any
15 contract, she received a sentence of 12 months and 1
16 day.  Again, her sentence has been reduced, and she's
17 been released.
18          So when you look at that, a sentence anywhere
19 above that sentence, we would assert, would be an
20 unwarranted sentencing disparity.
21          We would be asking the Court for a sentence
22 of probation with home detention, if necessary.  He's
23 basically been on that sentence practically now for a
24 year.  He's had no issues on pretrial supervision.  He
25 basically doesn't leave his house, and we would assert

```
 1  that all the sentencing factors, especially the fact of
 2  his age and his absolutely no prior criminal record,
 3  would point to that sort of probationary sentence.
 4              Thank you, Your Honor.
 5              THE COURT:  All right.  Are you seeking a
 6  departure based on health issues --
 7              MS. POUSSON:  Your Honor, I think under the
 8  Booker -- under the fact that --
 9              THE COURT:   -- as opposed to a variance?
10              MS. POUSSON:  Exactly.  It doesn't matter
11  what it's called.  We're seeking anything that gets him
12  to a fair and just sentence, Your Honor.
13              THE COURT:  Well, if you're seeking a
14  departure, I need to specifically rule on it other than
15  if you want me to consider his health issues as part of
16  a variance.
17              MS. POUSSON:  Right.  We would ask you to
18  consider his health issue, his age, and his good
19  conduct and character as part of the general
20  sentencing.  I don't think it needs to be termed a
21  departure.
22              THE COURT:  All right.  Thank you.
23              Mr. Snow, you have the opportunity to address
24  the Court if you would like to say anything, sir,
25  before it imposes sentence.
```

1             THE DEFENDANT:  I accept responsibility, Your
2    Honor.  I did a stupid thing and paid the price for it.
3    In all the years that I've done federal contracting,
4    which is over 30 years, I never did it.  It happened.
5    The young lady that I was with did it, and I went along
6    with it.  And now I'm paying the price for it.  So I
7    would ask you to consider that.
8             THE COURT:  All right.
9             THE DEFENDANT:  Thank you.
10            THE COURT:  Why don't you have a seat.
11            This is the sentencing in the case of *United
12   States v. William F. Snow* with respect to his
13   conviction for conspiracy to defraud the United States,
14   in violation of Title 18, United States Code,
15   Section 371, which is a Class D felony punishable by a
16   term of imprisonment of not more than 5 years, a
17   maximum of 3 years of supervised release, a $250,000
18   fine or twice the gross gain or loss, full restitution,
19   and a $100 special assessment.
20            This 71-year-old defendant was involved in a
21   scheme to defraud the United States in connection with
22   government contracts.  He was indicted on December 16,
23   2021, and on November 10, 2022, pled guilty to a single
24   count criminal information charging conspiracy to
25   defraud the United States.  He's been on personal

1  recognizance since his guilty plea.

2              The Court has reviewed the guideline sentence
3  applicable to this defendant and his offense.  The
4  defendant objects to the calculation of the guideline
5  sentence on two grounds.  First, the defendant contends
6  that the calculation should be based on Section 2B1.1
7  and not Section 2C1.1.  He also objects to the 2-level
8  enhancement under 2C1.1(b)(1) were that section to
9  apply.

10             Here the conviction arises from a scheme that
11 the Court, based on the evidence that it has,
12 essentially involved a bribery rather than a
13 straightforward economic offense.  Based on the
14 guidelines and the commentary, the Court concludes that
15 the guideline calculation should occur under
16 Section 2C1.1(b)(1) and also that a 2-level enhancement
17 under that section is appropriate.

18             Again, based on the information the Court
19 has, the Court concludes that the hiring of the
20 contracting officer's daughter while arguably
21 constituted a single bribe with multiple payments
22 related to that single bribe, the payments with respect
23 to that bribe were connected not to a single act but to
24 multiple actions on the part of the contracting
25 officer.

1              So for those reasons, the Court overrules the
2   objections the defendant has as to the guidelines based
3   on those calculations.
4              Based on the ruling, the Court calculates the
5   guideline sentence as follows:  The base level is 12,
6   appropriately increased by 2 levels, also appropriately
7   increased by 6 levels since the benefit exceeded
8   $6,500, also increased by 4 levels since it involved an
9   elected [sic] public official resulting in an overall
10  offense level of 24.  The defendant has accepted
11  responsibility and, therefore, is entitled to a 2-level
12  reduction.  Based on that acceptance, the government's
13  moved for an additional level, which the Court grants,
14  resulting in an overall offense level of 21.
15             This is the defendant's first offense placing
16  him in criminal history category I, the guideline
17  sentence for which is 37 to 46 months.  The defendant
18  is eligible for probation under the statute but not the
19  guidelines.  Supervised release is recommended at 1 to
20  3 years with a fine of $15,000 to $150,000, with
21  restitution as applicable, and a special assessment of
22  $100.
23             The Court has also reviewed the sentencing
24  factors under Section 3553 in determining what an
25  appropriate sentence is.  In that regard, this case

1  revolves around the interaction between this defendant;
2  the codefendant, Rita Starliper; and Defendant Diane
3  Sturgis, a government contracting officer for the
4  Broadcasting Board of Governors of BBG.
5         For a period of time, this defendant worked
6  for what is referred to as Company 1 owned by
7  Starliper, with whom he had a relationship while he was
8  employed with Company 2, a competitor of Company 1.
9  While an employee of Company 2, he emailed information
10 about Company 2's pricing data, costs, and labor
11 information with BBG, as well as internal discussions
12 within the company to his personal email and from that
13 to an account of Starliper.
14        Thereafter Company 1 bid, that is Starliper's
15 company, on the contracts that had been previously
16 awarded to Company 2, and Starliper's company
17 ultimately obtained those contracts based on false
18 applications submitted on behalf of that company.
19        Sturgis for her part engaged in conduct that
20 benefited Company 1 and its receiving the contract,
21 including urging the GSA employee assigned to review
22 the application to review that on an expedited basis.
23        In assessing this defendant's culpability,
24 the Court has considered his role relative to others,
25 and the Court has considered his explanation concerning

 1  how his role differed from Starliper's.
 2          As I indicated, this is the defendant's first
 3  offense.  He is a veteran and has had a steady and
 4  productive professional career.
 5          It's against this background that the Court
 6  has considered the guideline sentence and the extent to
 7  which it reflects an appropriate sentence.  In that
 8  regard, the Court has considered the defendant's
 9  involvement in this scheme relative to others, the
10  amount of funds involved, the extent of any loss
11  experienced by the government, and also, centrally, the
12  public interest in the corruption of the public
13  procurement process that defendant's activities
14  contributed to.
15          The Court has also considered the factors
16  that have driven the guideline sentence, including the
17  amount involved and the nature of the activity as it's
18  been characterized.
19          The Court has also considered the defendant's
20  age, his age upon release under any particular
21  sentence, and, centrally, the sentences already imposed
22  in this case on Sturgis and on Starliper in particular
23  and also other cases involving comparable defendants
24  and comparable conduct.
25          The Court has also considered the defendant's

1  health issues as outlined in his submissions and also
2  the collateral consequences related to his imprisonment
3  as the defendants have advised the Court.
4          The Court has also considered the defendant's
5  acceptance of responsibility and also the letters of
6  support it has received with respect to the defendant's
7  good qualities.
8          The Court is in a position to impose sentence
9  at this time.
10         Mr. Snow, would you come to the podium,
11 please.
12         Mr. Snow, it's the Court's conclusion that
13 the sentence should be comparable to what's already
14 been imposed on Ms. Starliper.  Therefore, it will be
15 the sentence of this Court you be committed to the
16 Bureau of Prisons for a period of one year and one day,
17 following which I'll place you on supervised release
18 for a period of one year under the standard terms and
19 conditions and also the special conditions:
20         That you apply any monies received from such
21 things as income tax refunds and so on to any
22 outstanding financial obligations.
23         You will not incur any new credit charges or
24 open additional lines of credit without the approval of
25 the probation office.

1              You will provide any access requested by the
2    probation office to any financial information.
3              The Court will impose a $100 special
4    assessment.
5              The Court is not going to impose a fine.
6              The Court will recommend that you be assigned
7    to the facility of Butner if it's available and
8    appropriate.
9              That will be the sentence of the Court.
10             MS. POUSSON:  Your Honor, may he
11   self-surrender after the --
12             THE COURT:  Yes.  The Court will allow you to
13   voluntarily surrender at a time and place to be
14   conveyed to you through probation under whose
15   supervision you will remain until you report to the
16   Bureau of Prisons.
17             Anything further?
18             MR. SULLIVAN:  Two housekeeping matters, Your
19   Honor:
20             I believe the Court may have misspoken, the
21   advisory guidelines indicated that Ms. Sturgis was an
22   elected public official.  I believe the plus four would
23   relate to the fact that she had a high-level,
24   decision-making, sensitive position.
25             THE COURT:  If I said elected public

1  official, I misspoke.  I didn't mean to do that.  I did
2  recognize that she was not an elected public official
3  but a high-level public official.
4           MR. SULLIVAN:  Secondly, at this time, the
5  government would move to dismiss the five counts in the
6  indictment.
7           THE COURT:  The motion will be granted.
8           Do you have an order?
9           MR. SULLIVAN:  I don't have it with me, but I
10 can submit it.
11          THE COURT:  Yes.
12          Is there an outstanding restitution issue?
13          MR. SULLIVAN:  No, Your Honor.  Although
14 restitution is mandatory, we are not seeking it in this
15 instance.
16          THE COURT:  All right.  Anything further?
17          MS. POUSSON:  No, Your Honor.  Thank you.
18          THE COURT:  All right.  Counsel is excused.
19          The defendant is released pending reporting
20 to the Bureau of Prisons.
21          The Court will stand in recess.
22          -------------------------------------
              Time:  9:45 a.m.
23
       I certify that the foregoing is a true and
24  accurate transcription of my stenographic notes.
                                    /s/
25                        _____
                          Rhonda F. Montgomery, CCR, RPR